UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANA M. FULLER,

                    Plaintiff,

                                              09-CV-6559

          v.
                                              **DECISION AND**
MICHAEL J. ASTRUE                             **ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## INTRODUCTION

Plaintiff Dana M. Fuller ("Plaintiff" or "Fuller") brings this action pursuant to 42 U.S.C. §405(g) of the Social Security Act ("the Act"), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") James E. Dombeck, which denied her application for benefits, was not supported by substantial evidence and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)") on grounds that the ALJ's decision is supported by substantial evidence in the record, and therefore, should be affirmed. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings on grounds that the ALJ's decision was in violation of Title II of the Act, as well as the

Regulations promulgated thereunder, and was not based on substantial evidence but rather was based on errors of law. Plaintiff requests that the Court reverse the Commissioner's decision and remand the matter for calculation and payment of benefits, or in the alternative, remand the matter for further administrative proceedings.

For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is denied and the Plaintiff's cross-motion is granted. Pursuant to sentence four of 42 U.S.C. §405(g), the Court remands the matter for calculation and payment of benefits.

## **PROCEDURAL BACKGROUND**

Plaintiff Dana M. Fuller ("Fuller") was born on January 12, 1965, and is presently forty-five years old. (Tr.[1] 43). On April 24, 2006, Fuller protectively filed an application for a closed period of disability and DIB for the period of January 3, 1998 through December 31, 2002, the date last insured for Title II benefits. (Id.[2]). She claimed that she was unable to work since January 3, 1998 due to depression, anxiety, obsessive compulsive disorder ("OCD") and panic disorder with agoraphobia. (Tr. 56). The application was initially denied on July 5, 2006, and Plaintiff

_____

[1] "Tr. ___" refers to the full record and transcript of administrative proceedings filed with the Commissioner's Answer.

[2] Plaintiff's Title II SSA application is not in the record.

filed a timely request for an administrative hearing. (Tr. 66, 67-80).

Plaintiff appeared, with counsel, and testified at the hearing on April 23, 2008 in Rochester, New York, before ALJ, James E. Dombeck. (Tr. 331-54). Plaintiff's husband also testified at the hearing. (Tr. 343-48). In a decision dated September 25, 2008, the ALJ found that Plaintiff was not disabled within the meaning of the Act for the period of disability from January 3, 1998 through December 31, 2002. (Tr. 11-21). The ALJ's decision became the final decision of the Commissioner on September 4, 2009, when the Appeals Council denied further review. (Tr. 5-8). On November 4, 2009, Plaintiff timely filed this action.

**FACTUAL BACKGROUND**

**A.    Medical Evidence**

Fuller has a long history of treatment for mental conditions, diagnosed as major depression, anxiety and panic disorder with agoraphobia and obsessive compulsive disorder ("OCD"). In 1986, at the age of 21, she was admitted for 22 days to The Meadows, an in-patient psychiatric facility in Pennsylvania, upon referral of a physician at the Park Ridge Chemical Dependency Program, due to "an acute exacerbation of depressive symptomology compounded by difficulties with her parents . . . and exacerbated by alcohol and substance abuse." (Tr. 291). Fuller was diagnosed with Major Affective Disorder, depression and Passive-Aggressive Personality Disorder (Tr. 291-303). She was prescribed Imipramine, an

antidepressant used to treat depression and other mental/mood disorders. (Id.). She was also diagnosed as having a "long-standing history of depression," with an anxiety and personality disorder that required therapy and medication. (Tr. 291, 303). The medical records related to Plaintiff's treatment at The Meadows contained in the record are rather extensive and indicate Plaintiff received substantial psychiatric, psychosocial and pyschological evaluation and treatment throughout her hospitalization. (Tr. 291-303).

Following her in-patient stay at The Meadows, Plaintiff was treated intermittently by her primary treating physician, Dr. Linda Rice, an internist. Treatment notes from August 21, 1989 through June 1, 2001, and May 2004, consistently diagnose depression or anxiety and panic disorders, and make reference to Dr. Rice's referrals of Plaintiff for mental health therapy and medication. (Tr. 304 - 313). Office notes also indicate that Plaintiff was prescribed several different antidepressants including Prozac, Trazodone, Paxil, Buspar, Effexor and Klonquin, all of which she did not tolerate well. (Id.). Moreover, Dr. Rice's treatment notes indicate that she and Plaintiff discussed on more than one occasion Plaintiff's anxiety, depression and tendencies for suicidal thoughts. Dr. Rice noted Fuller's willingness to seek mental health therapy but also noted Plaintiff's concerns regarding the cost of services. (Tr. 307-11). There is also an office note in

Dr. Rice's records indicating that Plaintiff was on a leave of absence from work in the Summer of 1994 for at least two weeks which was related to her anxiety and panic disorder. (Tr. 307).

Plaintiff was treated at the Mental Health Clinic of Family Service of Rochester, Inc. from October 5, 1999 through July 5, 2000, but discontinued treatment because of the cost. (Tr. 314). Those treatment notes indicate Plaintiff was diagnosed with panic disorder with agoraphobia and dependent traits. (Tr. 314-25). She was attempting to address her symptomology without medication. (Id.).

Beginning in May 2003 (within six months of the date last insured for benefits) through June 2006, Plaintiff treated with the Spiritus Christi Mental Health Outreach program by Elizabeth Masco, NP, and Dr. T. Pielnik. (Tr. 128-164). A medication chart in the record reveals Plaintiff was treated with the following medications during this period of time: Buspar (5mg); Vistaril (25mg); Luvox (50 mg); Klonopin (.25mg - 1mg); Ativan (.5 - 1mg); Celexa (20g); Seroquel (100g); Lamictal (200g). (Tr. 129-130). She was diagnosed with OCD, panic disorder with agoraphobia, depression and anxiety. (Tr. 131-164).

From 2004 through 2007, Plaintiff treated with several practitioners and the record is replete with evidence substantiating a diagnosis of OCD, major depression, and panic and anxiety disorder with agoraphobia, causing her total disability.

Plaintiff was also hospitalized on three occasions in 2006 because her condition had increased in severity over the years. (Tr. 179-285). Plaintiff's medication history is extensive, including Zoloft, Zyprexa, Klonopin, Anafranil, Lithium Carbonate, Propanolol, Geodon (to treat bi-polar disorder) and Inderal (a beta blocker).

## B.  Testimony

Plaintiff testified at the hearing on April 22, 2008 that she was diagnosed with OCD as a child and that she saw a psychiatrist when she was 7 years old. (Tr. 335). Plaintiff began treating with a therapist in high school. (Tr. 337-38, 349). She attended high school through the eleventh grade and attempted to obtain her GED through a program at Monroe Community College, but her panic disorder and agoraphobia prevented her from completing the program. (Tr. 304-305; 349-350). Plaintiff married her husband Steven in 1997, and they have two children. (Tr. 338). Her last job was working at a day care center in 1997, which she described as a "nightmare" due to her OCD and phobia of germs and people. (Tr. 338-39).

It is clear from the transcript of the hearing that only issue the ALJ sought to determine was the onset date of disability. At the beginning of the hearing, the ALJ stated: "There's really only one issue, and that is onset." (Tr. 333). Later in the hearing the ALJ explained to Plaintiff's husband that, "The largest issue

here is the date last insured [December 31, 2002]. What I am trying to ascertain is information or evidence of disability prior to that date . . . As we move beyond that, there's not - there's no really serious question about disability." (Tr. 344).

## C. The ALJ's Decision

The ALJ found that Plaintiff's depression and panic disorder with agoraphobia were severe impairments, but these impairments did not meet or equal the criteria in the Listing of Impairments ("the Listing") to support a *per se* determination of disability. (Tr. 16-17). The ALJ evaluated Plaintiff's residual functional capacity ("RFC") and determined that Plaintiff had the RFC to perform "simple work in a low-contact environment at all exertional levels." (Tr. 18). While her RFC precluded Plaintiff from her past work as a child care worker, the ALJ determined that, based upon her age, education and other relevant factors, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date she was last insured. (Tr. 20). Therefore, the ALJ concluded that Fuller was not disabled within the meaning of the Act during the period at issue between January 3, 1998 and December 31, 2002.

## DISCUSSION

## I. Jurisdiction and Scope of Review

The issue to be determined by this Court is whether the ALJ's decision that Plaintiff was not under a disability during the closed period of time from January 1998 through December 2002 is

supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Id.

Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229, (1938)); see also, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).

The court is also authorized to review the legal standards employed by the Commissioner in evaluating the Plaintiff's claim. The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." See Morici v. Astrue, 2008 WL 686763, *1 (W.D.N.Y. 2008) (Telesca, J.) (citing Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex 1983)).  Thus, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error.

<u>Arnone v. Bowen</u>, 882 F.2d 34, 37 (2d Cir. 1989) (citations omitted).

The Commissioner moves for judgment on the pleadings and an order affirming the ALJ's decision pursuant to sentence four of 42 U.S.C. 405(g), which provides "[t]he court shall have the power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." A remand to the Commissioner for further development of the evidence under 42 U.S.C. 405(g) is appropriate when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." <u>Rosa v. Callahan</u>, 168 F.3d 72, 82-83 (2d Cir. 1999). However, "where the existing Record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." <u>White v. Comm. of Soc. Sec.</u>, 302 F.Supp.2d 170, 174 (W.D.N.Y. 2004). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." <u>Id.</u>

Plaintiff also seeks judgment on the pleadings pursuant to Rule 12(c) and reversal of the ALJ's decision and remand for calculation and payment of benefits pursuant to the fourth sentence of §405(g). A party is entitled to judgment on the pleadings under Rule 12(c) if she can establish that no material facts are disputed

and that she is entitled to judgment as a matter of law. <u>See</u> <u>Cleveland v. Caplaw Enterprises</u>, 448 F.3d 518, 521 (2d Cir. 2006).

Judicial review of a Social Security disability determination involves two levels of inquiry. <u>Wright v. Barnhart</u>, 473 F.Supp.2d 488, 492 (S.D.N.Y. 2007) (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999). First, the court determines whether the Commissioner applied the correct legal standard in the disability hearing. <u>Id.</u> Second, the court must review the record to determine whether the Commissioner's decision is supported by "substantial evidence." <u>Id.</u>

For the reasons set forth below, I find that (1) the ALJ did not apply the correct legal standards in evaluating the evidence before him, and (2) his decision that Plaintiff was not disabled for the closed period between January 1998 through December 2002 was not supported by substantial evidence in the record. I find that the record contains substantial evidence of disability during the relevant period such that further evidentiary proceedings would serve no purpose. Accordingly, Plaintiff's motion for judgment on the pleadings is granted.

## II. There is substantial medical evidence in the record to support a determination that Plaintiff was disabled during the closed period of January 1998 through December 2002.

In his decision, the ALJ applied the Social Security Administration's five-step sequential analysis.[3] <u>See</u> 20 C.F.R.

_____

[3] The Act sets forth a five-step process for determining disability. The Commissioner must find a claimant disabled if he determines, "(1) that the claimant is not working, (2) that [she] has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of

-10-

§ 404.1520(a)(4). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on January 3, 1998. (Tr. 16). The ALJ determined at step two that through the date last insured (December 31, 2002), Plaintiff's depression and panic disorder with agoraphobia were severe impairments. (Id.). However, the ALJ determined at step three that these impairments did not meet or equal, either singly or in combination, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 to warrant a finding of "*per se*" disability. See 20 C.F.R. 404.1520(d); 20 C.F.R. 404.1525; 20 C.F.R. 404.1526); (Tr. 17). Before proceeding to step four, the ALJ evaluated Plaintiff's residual functional capacity.

## A.  The ALJ erred in disregarding the pre-2003 medical evidence.

In analyzing Plaintiff's RFC, the ALJ must first determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce" the alleged symptoms. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they

---

disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, [and] (5) there is not another type of work the claimant can do." See Wright v. Barnhart, 473 F.Supp.2d 488, 492 (S.D.N.Y. 2007) (quoting Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); see also, 20 C.F.R. § 404.1520(a) and 416.920(a)(4)(i)-(v).

limit the claimant's ability to do basic work activities.  See 20
C.F.R. § 404.1529(c); SSR 96-7p.

The ALJ's decision reveals that in evaluating Plaintiff's RFC,
he considered Plaintiff's symptoms and the objective medical
evidence as required by the Act.  (Tr. 18).  However, the ALJ
repeatedly mis-characterized much of the pre-2003 medical evidence
as being "sporadic" treatment for depression and anxiety and/or
mental health complaints. (Tr. 18-9).  In doing so, the ALJ did not
consider that portion of the record regarding Plaintiff's in-patient
treatment in 1986 at The Meadows, wherein Plaintiff's treatment for
her long-standing history of depression and personality disorder
were substantially detailed.  (Tr. 291-303).

The ALJ also disregarded Dr. Rice's treatment of the Plaintiff
from 1989 through 2004, characterizing this portion of the record
as demonstrating only a "sporadic history of mental health
complaints."  (Tr. 19).  That assessment is not accurate and is
inconsistent with Dr. Rice's office notes.  At each visit,
Plaintiff's depression and anxiety and/or panic disorder were noted
and often discussed, along with the effect of various medications
prescribed to treat her condition.

Moreover, the ALJ concluded, "there is no documented evidence
of [claimant's] inability to function in a work setting until 2004
[]."  This too is not entirely accurate in view of Dr. Rice's office
note indicating in 1994 Plaintiff was absent from work for at least
two weeks due to her depression and panic disorder.  (Tr. 307).

-12-

Similarly, the ALJ discredited Plaintiff's treatment received from the Family Service of Rochester from 1999 through 2000 because Plaintiff was attempting to manage her symptomology without medication. (Tr. 18) ("It was noted that the claimant was able to better manage of [sic] her symptoms after she stopped watching scary movies and reading 'thriller fiction.'") However, in doing so, the ALJ ignored Plaintiff's diagnosis of a moderately severe panic disorder with agoraphobia which remained the same when she discontinued treatment due to financial constraints. (Tr. 314).

An ALJ cannot "ignore an entire line of evidence that is contrary to [his] findings." Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir.2001) (quoting Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir.1999)). Moreover, an ALJ is not free to substitute his own lay opinion for opinions from treating sources. Brown v. Apfel, 991 F.Supp. 166, 172 (W.D.N.Y. 1998) (citing Pietrunti v. Director, Office of Workers' Compensation Programs, 119 F.3d 1035, 1042 (2d Cir. 1997).

A review of the entire record reveals a long history of major psychiatric problems diagnosed and treated prior to December 31, 2002. (See Tr. 289, 294, 302, 305-313, 314-324). Thus, there is substantial evidence in the record that Plaintiff's long-standing problems with depression, anxiety and panic disorder with agoraphobia could reasonably be expected to impair her ability to work during the relevant period under consideration.

**B. The ALJ improperly assessed the credibility of Plaintiff's testimony at the hearing.**

In the second step of evaluating Plaintiff's RFC, the ALJ determined that claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were "not credible to the extent they are inconsistent with [the ALJ's RFC] assessment []." (Tr. 19). The ALJ found:

> Although the evidence of the claimant's subsequent deteriorating mental health lends credence to her allegations of the existence of mental impairments prior to the date last insured, her failure to seek treatment through low-cost or free mental health programs belies the severity of her alleged symptoms before the date last insured. The claimant has admitted that after leaving her job in January 1998 she was fully functional in her home with her children. Her allegations of severe agoraphobia are undercut by her admission that she drove herself to doctors' appointments and by evidence in the record that she socialized with friends outside her home.

(Tr. 19). This finding is inconsistent with Regulation 404.1530 and the claimant's testimony at the administrative hearing. It also disregards the affect of receiving ECT treatments in March - April 2008[4].

Plaintiff's husband testified that his wife was "pretty much functional" at home after she left her job in 1998. (Tr. 352).

---

[4] "ECT" is the abbreviation for "Electroconvulsive Therapy." The acute effects of ECT can include amnesia, both retrograde (for events occurring before the treatment) and anterograde (for events occurring after the treatment). See Lisanby SH, Maddox JH, Prudic J, Devanand DP, Sackeim HA, "The effects of electroconvulsive therapy on memory of autobiographical and public events," Arch. Gen. Psychiatry, June 2000, vol. 57(6), pp. 581-590; Benbow, SM; "Adverse effects of ECT," The ECT Handbook, 2d Ed (2004), pp. 170-174.

There was no further testimony from him or his wife what "pretty much functional" meant. He certainly did not testify that she was "fully functional" as found by the ALJ. (Tr. 19). Plaintiff testified that she could not finish schooling for her GED because of her panic disorder, her former job as a daycare worker was a "nightmare," due to her OCD and phobia of people and "stuff," and her failure to recall treatment in 1998-2002 was largely due to recent ECT treatments (the effect of which the ALJ repeatedly acknowledged). (Tr. 336; 338-39; 340-50; see footnote 4, *infra*).

Plaintiff also testified that she could not do any grocery shopping. (Tr. 339). As to socializing, the only reference is to the ability to socialize with her family members, but much of that is centered around discussing her condition and treatment, and that note is dated outside the relevant time period. (Tr. 196). "The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from [a claimant's] credibility as to [her] overall disability." F. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Thus, the fact that Fuller drove herself to doctors' appointments and was able to perform certain daily activities does not undercut her claim of disability during the relevant time period.

Moreover, a claimant cannot be denied social security benefits for failing to obtain medical treatment that would ameliorate her condition if she cannot afford that treatment. See 20 C.F.R.

§404.1530, §416.930; see also, Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000) ("Given the many times plaintiff was treated . . ., and that his condition did not improve, it was not unreasonable for him to discontinue those treatments, particularly in light of his testimony that he could not afford further medical care."); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (disabled claimant cannot be denied benefits for failing to obtain treatment he cannot afford).

Here, the ALJ did not accurately depict the testimony regarding the severity of her symptoms and/or the medical evidence. A plaintiff "need not be an invalid to be found disabled" under the Social Security Act. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988)). The ALJ was not entitled to dismiss Plaintiff's subjective testimony solely because she engaged in a limited range of daily activities and could not afford medical treatment that might improve her condition. See id.

Indeed, SSR 83-20 provides, "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical

and other evidence that describe the history and symptomology of the disease process."

In this case, Plaintiff's testimony and that of her husband, are the only sources of evidence to address the time frame at issue due to the unavailability of other medical evidence. It is not surprising that there is not more medical evidence relating to Plaintiff's treatment 10-12 years ago. Most of the records have likely been destroyed by the providers in the normal course of business. Therefore, under SSR 83-20, the ALJ was required to infer the onset date from the medical evidence that described the history and symptomology of Plaintiff's disease, which was available in the record - i.e., The Meadows records, the Family Service of Rochester records, and Dr. Rice's records.

By ignoring much of the evidence that was available and relevant to the time frame at issue and by discrediting and misstating the plaintiff's testimony, the ALJ improperly concluded that Plaintiff maintained the RFC to perform simple work in a "low-contact" environment.

**III.      The ALJ erred in disregarding the retrospective medical opinion of one of Plaintiff's treating physicians.**

The ALJ opined that Plaintiff was precluded from performing her past relevant work as a child care worker, but she was able to perform other unspecified jobs during the closed period of disability. (Tr. 20-21). In reaching this conclusion, the ALJ stated:

> There is no medical opinion of disability in the record that is contemporaneous with the period at issue. The opinion of the claimant's treating clinical psychologist, Timothy Enright, Ph.D., that the claimant has been 'unable to meet the demands of gainful employment' since January 1998 . . . is given no weight, as it is not based upon his own or others' examinations and/or treatments of the claimant during the period at issue.

(Tr. 20).

It was error for the ALJ to give Dr. Enright's treating source medical opinion as to Plaintiff's onset of disability "no weight." The Regulations specify that a treating source's opinion is entitled to some weight in claims for Social Security disability benefits. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)(quoting 20 C.F.R. 404.1527(d)(2); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999)). The current rule provides that the treating physician's opinion as to the claimant's disability is controlling if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. 404.1527(d)(2). "Even if the treating physician's opinion is retrospective, it will be binding unless contradicted by other medical evidence or by 'overwhelmingly compelling' non-medical evidence." Brown v. Apfel, 991 F.Supp. 166, 171 (W.D.N.Y. 1998) (quoting Saviano v. Chater, 956 F.Supp. 1061, 1069 (E.D.N.Y. 1997)) (citations omitted).

A review of the medical record reveals that Plaintiff had been treated by Dr. Enright since 2004 (which was within two years of the date last insured). His retrospective opinion was based upon at least four years of treating the Plaintiff, and upon his review of, among other things, treatment records for the period of May 2003 through June 2006 (treatment beginning within six months of the date last insured). His opinion as to disability onset was not contradicted by other medical evidence during the relevant time period or by non-medical evidence. In fact, his opinion is entirely consistent with the entire medical record[5].

The ALJ clearly ignored relevant portions of the medical evidence that would support a disability onset date of January 1998. This selective adoption of only the least supportive portions of a medical source's statements is not permissible. See Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006). "Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. . . . In determining the date of onset of

---

[5] Dr. Enright's opinion was reliable, and although he did not treat Plaintiff during the period in question (1998 - 2002), there is ample evidence in the record upon which he could render a meaningful opinion. It is interesting that a decision concerning the claimant's non-disability can be supported by and based upon the opinion of a non-examining consultative physician by merely examining medical records and opinions provided to him/her for review. See e.g., Buxton v. Halter, 246 F.3d 762 (6th Cir. 2001). Yet, here, Dr. Enright relies upon medical records of past treatment, including Plaintiff's history of multiple hospitalizations, and his opinion is given no weight " . . . as it is not based upon his own or others' examinations and/or treatment of the claimant during the period at issue." (Tr. 20).

-19-

disability, the date alleged by the individual should be used if it is consistent with all the evidence available." SSR 83-20.

Based upon the treating physician's opinion and the substantial medical evidence in the record, I conclude that the totality of the objective medical evidence in the record supports a finding of a disability onset date of January 1998, and the ALJ erred in affording no weight to Dr. Enright's opinion.

## VI. The ALJ's finding that Plaintiff could engage in other substantial gainful activity is not corroborated by evidence in the record.

At step five, the ALJ improperly relied on the Medical-Vocational Guidelines ("the Grids") to determine that Plaintiff could perform other work. (Tr. 20-1). Given Plaintiff's age, education, previous work experience and her RFC during the relevant time period, the ALJ concluded that she was not disabled. (Id.).

As indicated above, the ALJ made it clear during the hearing that he was convinced that Plaintiff was currently disabled, and the only issue was the date of disability onset. In such circumstances, SSR 83-20 requires the ALJ to consult a medical advisor when the disability issue solely involves a question of onset. The Regulation provides that if reasonable inferences cannot be made on the basis of evidence in the file, it may be necessary to explore other sources of documentation, such as a medical advisor, family members, friends, and the former employer. See SSR 83-20.

Here, the ALJ determined that Plaintiff, who was 37 years old at the alleged onset date, was a younger individual with at least

a high school education and the ability to communicate in English. (Tr. 20). The ALJ noted that Plaintiff had no transferrable skills but that transferability of job skills was not material to the determination of disability because using the Grids supported a finding that Plaintiff was "not disabled." (Id.). The ALJ determined that following the framework of Medical-Vocational Rule 204.00 would direct a finding of "not disabled" if Plaintiff had the RFC to perform the full range of heavy work. (Tr. 21).

The ALJ relied on an inaccurate RFC assessment, which characterized Plaintiff's non-exertional limitations as "sporadic," and disregarded the substantial medical evidence in the record of her long-standing mental illness dating back to childhood. I find that the ALJ's reliance upon Grid Rule 204.00 was inappropriate and constituted reversible error.

Accordingly, I find that the ALJ failed to properly analyze the medical evidence in the record, incorrectly assessed Plaintiff's credibility, and misapplied legal standards. There is substantial evidence in the record to support a finding of disability onset on January 3, 1998 through the date last insured, December 31, 2002.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision that the Plaintiff was not disabled during the closed period of January 3, 1998 through December 31, 2002 was based on errors of law and was not supported by substantial evidence. The record contains substantial evidence of disability

during the relevant period such that further evidentiary proceedings would serve no purpose.  I therefore grant judgment on the pleadings in favor of the Plaintiff and remand this case to the Social Security Administration for calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                   S/Michael A. Telesca
                         _____
                         Michael A. Telesca
                         United States District Judge
DATED: Rochester, New York
       September 7, 2010

_____